FILED
06/10/2022
Clerk of the
Appellate Courts

# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 3, 2021 Session[1]

## TOMMIE PHILLIPS v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals
Criminal Court for Shelby County
No. 09-05231      W. Mark Ward, Judge**

_____

### No. W2019-01927-SC-R11-PC
_____

In this post-conviction matter, we clarify the appropriate burden of proof and legal standard to be applied when a criminal defendant claims ineffective assistance of counsel based on trial counsel's failure to move to suppress evidence on Fourth Amendment grounds. The Petitioner, Tommie Phillips ("Petitioner") was convicted of several offenses, including felony murder, attempted first-degree murder, aggravated rape, especially aggravated kidnapping, and especially aggravated burglary. The Court of Criminal Appeals modified the especially aggravated burglary conviction to aggravated burglary. The Petitioner filed a petition for post-conviction relief, asserting, among other things, that his trial counsel was constitutionally ineffective by failing to seek suppression of various statements he made to police on Fourth Amendment grounds. The post-conviction court denied the petition, and the Court of Criminal Appeals affirmed the decision of the post-conviction court. We granted the Petitioner's application for permission to appeal and directed the parties to discuss the applicable standard of review in this case. Specifically, the Court sought to clarify the petitioner's burden to establish prejudice when he or she alleges counsel was constitutionally ineffective for failing to file a motion to suppress on Fourth Amendment grounds. Upon our review of the record and applicable law, we conclude that to establish prejudice with this type of claim, the petitioner must prove that "his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). In applying this standard to the case before us, we conclude that the Court of Criminal Appeals properly affirmed the post-conviction court's denial of relief. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

---

[1] We heard oral argument through videoconference under this Court's emergency orders restricting court proceedings because of the COVID-19 pandemic.

JEFFREY S. BIVINS, J., delivered the opinion of the court, in which ROGER A. PAGE, C.J., and SHARON G. LEE and HOLLY KIRBY, JJ., joined.

Josie S. Holland and Valerie T. Corder, Memphis, Tennessee, for the appellant, Tommie Phillips.

Herbert H. Slatery, III, Attorney General and Reporter; Andrée Sophia Blumstein, Solicitor General; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

Jonathan Harwell, Joshua Stanton, Susan L. Kay, Jackson M. Hill, and Anya Van Soestenbergen, Nashville, Tennessee, for the Amici Curiae, Penny J. White, Steven L. Mulroy, Terry A. Maroney, and the Tennessee Association of Criminal Defense Lawyers.

**OPINION**

### I.    FACTUAL AND PROCEDURAL HISTORY

This post-conviction appeal arises out of the Petitioner's brutal attack on a family in their home in Memphis.[2]   On December 9, 2008, the Petitioner entered the home of M.L.,[3] where she lived with her eighty-five-year-old mother, F.G, her son, C.L, and her daughter, M.J.L.  State v. Phillips, No. W2012-01126-CCA-R3-CD, 2013 WL 6529308, at *1 (Tenn. Crim. App. Dec. 13, 2013), perm. app. denied, (Tenn. Mar. 25, 2014).  The attack resulted in the death of F.G. and severe stab wounds to M.L. and C.L.  Id. at *5–6.  When the responding police officers arrived at the scene, M.J.L. told them the perpetrator was a friend of C.L.'s, but she did not know his name.  Id. at *7.  A crowd had gathered by that time, and "[s]ome of the people in the crowd told [one of the responding officers] that the [Petitioner] was responsible."  Id.  M.L. and C.L. were transported to the hospital as a result of the injuries they sustained.  Id. at *5–6.  While in the hospital, C.L. and M.L. were each shown a photographic array from which they identified the Petitioner as the perpetrator of the attack.  Id.  C.L. also identified the Petitioner by first and last name.  Around that same time, M.J.L. also was shown a photographic array, and she identified the Petitioner as the perpetrator.[4]

---

[2] The Court of Criminal Appeals' opinion in the Petitioner's direct appeal contains a full recitation of the underlying facts of the attack.  See State v. Phillips, No. W2012-01126-CCA-R3-CD, 2013 WL 6529308, at *1–17 (Tenn. Crim. App. Dec. 13, 2013), perm. app. denied, (Tenn. Mar. 25, 2014).

[3] Due to the nature of the offenses, we identify each of the victims by their initials.

[4] Although this is not in the record before us, it was part of the record in the Petitioner's direct appeal in this case.  As such, we take judicial notice of this fact.  See Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987) (per curiam) ("The courts may take judicial notice of the court records in an earlier

On December 10, 2008, after being identified as a suspect, the Petitioner surrendered himself to police. Id. at *7. The Petitioner and his mother were then transported to the police station. Id. While en route to the police station, the transporting officer overheard the Petitioner tell his mother "his side of the story," which included a statement that he stabbed C.L. in self-defense. Id. Later that day, Sergeant Anthony Mullins and Lieutenant Colonel Caroline Mason of the Memphis Police Department asked the Petitioner if he would like to talk to them, and the Petitioner said that he did. Id. at *7–8. The officers advised the Petitioner of his Miranda rights. According to a police report submitted into evidence, the Petitioner's leg was shackled to a bench.

During the course of the interview, the Petitioner explained that he and C.L. had been friends for several years and were involved in drug dealing together. Id. at *7. The Petitioner stated that he had fronted C.L. drugs four or five days before the incident, and a disagreement developed concerning the money involved. Id. According to the Petitioner, on December 9, 2008, C.L. let the Petitioner into his home and offered him a shotgun as compensation for the money owed, but the Petitioner declined. Id. The Petitioner stated that he and C.L. began fighting before C.L. pointed a shotgun at him, at which point the Petitioner grabbed a knife and defended himself. Id. M.L. then got involved in the altercation with a hammer. Id. The Petitioner told the officers that he then heard F.G. complaining about her heart, so he put a pillow under her head. Id. The Petitioner then told the officers that he did not have anything else to say to them without his attorney. Id. Upon this request, the officers stopped the interview. Id. Believing they had probable cause, the officers booked the Petitioner into jail and sought a forty-eight-hour hold. Id.

Later that day, at 7:13 p.m., a judicial commissioner entered an order granting the Memphis Police officers' request for a forty-eight-hour hold. In the order, the judicial commissioner stated:

> The reason(s) for requesting this detention is/are as follows: On Tuesday, December 9, 2008, at 3:10 p.m., Memphis Police officers responded to a wounding call at [a home in Memphis]. On arrival they found two persons had been stabbed and one victim was found dead on the scene. The surviving victims identified [the Petitioner] as the person responsible for stabbing them inside their home. On Wednesday, December 10, 2008, [the Petitioner] turned himself in and told investigators he stabbed the two surviving victims. Additional time is needed to verify the statement made by [the Petitioner] and to conduct additional information from the surviving victims at the hospital.

proceeding of the same case and the actions of the courts thereon." (citing State ex rel. Wilkerson v. Bomar, 376 S.W.2d 451 (Tenn. 1964))).

The Court has reviewed the above listed facts for the detention of said defendant and has determined that there is probable cause to believe that the crime(s) alleged, to wit: First Degree Murder TCA 39-13-202, was/were committed, and that the [Petitioner] committed said crime(s).

On December 11, the Petitioner gave another statement after advising the jailer that he wished to speak with the detectives. Id. at *8. The Petitioner was again advised of his Miranda rights and agreed to speak to the officers without an attorney. Id. In his statement, the Petitioner admitted responsibility for F.G.'s death and the injuries to C.L. and M.L. Id.

The Petitioner subsequently was charged with four counts of first-degree felony murder, one count of first-degree premeditated murder, two counts of attempted first-degree murder, two counts of aggravated rape, six counts of especially aggravated kidnapping, and three counts of especially aggravated burglary. Id. at *1. The State later filed notice that it intended to seek the death penalty, as well as, in the alternative, a sentence of life without the possibility of parole. Before trial, however, the State withdrew its notice of intention to seek the death penalty. The case proceeded to trial, and a jury convicted the Petitioner of multiple offenses. After the trial court appropriately merged several convictions, the Petitioner effectively was convicted of one count of felony murder, two counts of attempted first-degree murder, one count of aggravated rape, one count of especially aggravated burglary, and three counts of especially aggravated kidnapping. Id. at *9. The jury did not choose to sentence the Petitioner to life without parole. As a result, the trial court sentenced the Petitioner to a life sentence plus sixty years.

On direct appeal, the Court of Criminal Appeals modified the especially aggravated burglary conviction to an aggravated burglary conviction, but it affirmed the judgments in all other respects. Id. at *26. The Petitioner subsequently filed a Rule 11 application for permission to appeal, which this Court denied in March 2014. In December 2014, the Petitioner timely filed a petition for post-conviction relief.

In his petition, the Petitioner argued, *inter alia*, that trial counsel failed to provide effective assistance of counsel based on counsel's alleged failure to challenge the admissibility of his statement to police on Fourth Amendment grounds. See Phillips v. State, No. W2019-01927-CCA-R3-PC, slip op. at 4 (Tenn. Crim. App. Feb. 26, 2021), perm. app. granted, (Tenn. June 17, 2021). An evidentiary hearing was held in four parts on May 11 and August 20, 2018, and May 14 and September 20, 2019.

During the May 11, 2018 hearing, Attorney G., an assistant district public defender, testified regarding his representation of the Petitioner at trial. Attorney G. recalled that he and Attorney S. tried the Petitioner's case as part of the capital defense team and that Attorney S. was lead counsel. By the time he represented the Petitioner, he had been an attorney for fifteen years, all of which he spent with the Public Defender's Office. He estimated that he had handled approximately two-dozen criminal cases that went to trial,

- 4 -

six or eight of which were first-degree murder cases. He had tried at least one other capital case to verdict prior to the Petitioner's trial.

Attorney G. ultimately was pleased with the outcome of the case, stating that the defense team was successful in getting the Petitioner a life sentence rather than a sentence of life without the possibility of parole. When asked if anything could have gone better in the case, Attorney G. could not remember, but he noted that the facts of the case were "problematic." He stated that "[i]dentity was not an issue" in the case, as there were individuals involved in the case who knew the Petitioner that could identify him. Additionally, Attorney G. noted that the Petitioner had made a statement implicating himself.

During the August 20, 2018 hearing, Attorney N. testified that he was appointed to represent the Petitioner shortly after the Petitioner's arrest. Attorney N. had been an attorney since 1976 and began working for the Public Defender's Office in approximately 1999. He served on the capital case team for the entirety of his time at the Public Defender's Office. Prior to his representation of the Petitioner, he had handled approximately twelve or thirteen homicide trials.

Attorney N. recalled that the defense team raised several pretrial issues in the Petitioner's case, including a "lengthy hearing on a motion to suppress and motion in limine on the photographic identification." He was familiar with the Memphis Police Department's forty-eight-hour hold policy and acknowledged that a magistrate had granted a forty-eight-hour hold in the Petitioner's case. Attorney N. stated that the defense team had considered challenging the forty-eight-hour hold in the Petitioner's case but ultimately did not do so. He did not recall specifically why the defense team chose not to raise the issue. Attorney N. testified he had challenged the policy's constitutionality in a different case and did not believe it had ever been successfully challenged. Attorney N. represented the Petitioner until his retirement from the Public Defender's Office. Upon his retirement, other members of the capital defense team took over the Petitioner's case.

At the May 14, 2019 hearing, Lieutenant Colonel Caroline Mason of the Memphis Police Department testified that she assisted in the investigation of the Petitioner's case. On December 9, 2008, Lieutenant Colonel Mason proceeded to the scene of the homicide at the victims' home and canvassed the area. At that same time, two other officers investigating the case went to the hospital to meet with the victims, where C.L. identified the Petitioner as the perpetrator by first and last name.

The next day, at approximately 12:40 p.m., the Petitioner turned himself in to the police. He stated that he wanted to go to the Homicide Office to clear his name. While at the police station, Lieutenant Colonel Mason and Sergeant Mullins interrogated the Petitioner after reading him his <u>Miranda</u> warnings. Lieutenant Colonel Mason testified that, during their interrogation, the Petitioner admitted to stabbing one or more of the victims but claimed he did so in self-defense. He then asked for an attorney, and the

officers ceased their questioning. Lieutenant Colonel Mason testified that, at that point, they had probable cause to charge the Petitioner but were still trying to determine what the appropriate charges were. She confirmed that a forty-eight-hour hold was put on the Petitioner that day at 7:13 p.m. so that they could investigate what he had told her and compare it to the information provided by the victims. Lieutenant Colonel Mason explained the Memphis Police Department's forty-eight-hour hold policy, which was in place at the time of the offenses but is no longer utilized:

> 48-hour holds give[] us the opportunity if we do have the possible suspect or the person of interest in the – in our interview rooms. We're talking to them, getting information from them. We follow all the steps with the <u>Miranda</u> Warning. They waive that right and agree to speak with us. We'll gather information from them, and if we don't have enough at that time to charge but that person of interest has provided some information, we want to go back and verify that information before we place – formally charge them to it.
>
> Sometimes it exonerates them. If they're not guilty, then we release the hold. But we usually use that as an opportunity to verify some more information or get some more witnesses in if we get the person of interest in before.

Lieutenant Colonel Mason and Sergeant Vivian Murray interviewed the Petitioner again on December 11, 2008 after the Petitioner asked to speak with them. According to Lieutenant Colonel Mason, the Petitioner's second statement was more inculpatory than his first statement. The Petitioner was charged the following day at 4:51 p.m. Lieutenant Colonel Mason did not believe the forty-eight-hour hold had expired by that time, as she believed the hold began on December 10 at approximately 7 p.m.

Attorney S. also testified at the May 14, 2019 hearing. Attorney S. had been an attorney for approximately twenty years by the time of the Petitioner's trial with the vast majority of his practice being in criminal law. He estimated that he had worked on thousands of criminal cases during his career. He had handled more than 100 jury trials, approximately eighty percent of which were first-degree murder cases. Attorney S. was the lead attorney for the Shelby County Public Defender's Office capital defense team.

Attorney S. remembered the Petitioner and his case. He did not recall exactly how many times he went to the jail to speak with the Petitioner, but he explained that the capital defense team never went more than two weeks without seeing a client. When asked if he was satisfied with the outcome of the Petitioner's case, Attorney S. stated that he "never liked losing" but that the defense team did "everything [they] could do and put on the best defense [they] knew how to put on." He described the Petitioner's case as a "hard case."

The Petitioner was the final person to testify at the May 14, 2019 hearing. He was not happy with the outcome of his trial, as he felt his constitutional rights were violated. He stated that he was initially picked up by police officers on December 10, 2008. Because his mother was in the car with the police officers when they arrived, he surrendered himself at that time. He then was escorted to the police station where he was questioned by Sergeant Mullins and Lieutenant Colonel Mason. While being questioned, the Petitioner's leg was shackled to the bench. The Petitioner admitted to Sergeant Mullins and Lieutenant Colonel Mason that he stabbed C.L., but he claimed that it was in self-defense. At some point during the interview, the Petitioner invoked his right to counsel.

At the September 20, 2019 hearing, the parties summarized their arguments to the post-conviction court. The Petitioner's primary argument was that trial counsel was ineffective in handling his motion to suppress, asserting that counsel should have sought suppression of his statement on Fourth Amendment grounds. The Petitioner claimed that, if counsel had done so, the statement would have been suppressed and it would have been "a structural constitutional issue that would have required reversal on appeal." The Petitioner specified that "the unreasonable and undue delay that occurred in [his] case before he was properly charged" constituted a Fourth Amendment violation. The Petitioner also contested the factual assertion that he voluntarily surrendered himself to police on December 10, 2008.

The State argued that "this was an incredibly difficult case with incredibly difficult facts . . . where the proof was fairly compelling against the [Petitioner]." As such, trial counsel focused on mitigation and was successful in doing so. In addition, the State asserted that, in seeking suppression of the Petitioner's statement, trial counsel made the decision to focus on the Petitioner's "request for a lawyer in the second statement that was made by the [Petitioner] after that request" rather than focus on the forty-eight-hour hold. The State remarked that, by the time the Petitioner provided his initial statement, he had incriminated himself and been identified by one or more of the victims in the case. Lastly, the State noted that the trial court had not found the Petitioner's testimony regarding "issues of coercion and the pressures that he had felt in order to give the second statement" credible, and the Court of Criminal Appeals agreed with that assessment. The State claimed that, given that finding, it did not know whether the Petitioner would have been able to successfully raise an issue with regard to the forty-eight-hour hold, as "much of that would have again depended on [the Petitioner's] testimony."

The post-conviction court then took the case under advisement. On September 25, 2019, the post-conviction court entered an order denying post-conviction relief based on the Petitioner's failure to prove his claim of ineffective assistance of counsel. In its order, the court ruled, *inter alia*, that the Petitioner had not carried his burden of proof in alleging that trial counsel was ineffective "in failing to file a motion to suppress his statements given

- 7 -

to the police as being in violation of the Petitioner's Fourth [A]mendment rights."[5] Specifically, the post-conviction court stated:

> At least one of the victim's [sic] identified the Petitioner as the culprit. As such, it is clear that the police had probable cause to arrest the Petitioner, even if he had not voluntarily turned himself in to the police. More specifically, it appears as though the Petitioner is making a claim that his 4th Amendment rights were violated because he was not given a Gerstein probable cause determination as required by law. See Gerstein v. Pugh, 420 U.S. 103[,] 95 S.Ct. 854, 43 L.Ed. 2d 54 (1975). It appears that the police responded to the scene of the crime around 3:00 p.m. on December 9, 2008. The Petitioner turned himself into the police at around 12:40 p.m. on December 10, 2008. Probable cause was determined by a judicial commissioner on December 10, 2008 (document is stamp filed at 7:13 p.m.). According to the finding of probable cause[,] the [Petitioner] had already turned himself in and confessed at the time the probable cause determination was made. As such, a Gerstein determination was, in fact, made within seven (7) hours of [the Petitioner] coming into custody. Accordingly, there was no Gerstein violation. See State v. Gonzales, 2018 WL 5098204 [(]Tenn. Crim. App. Oct. 18, 2018) (neither defendant's presence nor an adversary hearing is required to satisfy Gerstein; the only question is whether there is probable cause justifying detention). Accordingly[, the] Petitioner has failed to demonstrate either "deficient performance" or "prejudice."

The Petitioner appealed the decision of the post-conviction court to the Court of Criminal Appeals. In his appeal, he "reassert[ed] his claim of ineffective assistance of counsel, arguing that his counsel performed deficiently by failing to challenge the admission of his statement on Fourth Amendment grounds because 'there was an unreasonable delay in obtaining a probable cause hearing.'" Id. at 9. The Court of Criminal Appeals affirmed the judgment of the post-conviction court. Id. at 11. The court concluded that the Petitioner "failed to present any evidence at the evidentiary hearing that suggests that a Fourth Amendment challenge to his statement would have been sustained by the trial court." Id. at 10. Highlighting the fact that three witnesses identified the Petitioner as the perpetrator, the Court of Criminal Appeals determined that, even if the Petitioner had proved a Fourth Amendment challenge would have been successful, "he still [could not] show that the result of his trial would have been different given the overwhelming proof of his guilt." Id.[6]

---

[5] The post-conviction court denied all other grounds for relief the Petitioner presented in his petition, none of which are at issue in this appeal.

[6] The Petitioner asserts that the post-conviction court and Court of Criminal Appeals incorrectly applied a harmless error analysis to the prejudice prong of Strickland v. Washington rather than the reasonable probability standard. See 466 U.S. 668, 694 (1984) ("The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

- 8 -

The Petitioner appealed the decision of the Court of Criminal Appeals, and this Court granted review on June 17, 2021.

## II.  ANALYSIS

The Petitioner raises several issues in support of his claim that counsel was ineffective for failing to file a motion to suppress statements he gave to police in violation of his Fourth Amendment rights.  In sum, Petitioner urges this Court to adopt the test in Kimmelman v. Morrison, 477 U.S. 365 (1986), which sets forth the analysis for ineffective assistance of counsel claims premised on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds.  As part of this argument, Petitioner asks this Court to end reliance on Cecil v. State, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436 (Tenn. Crim. App. Sept. 12, 2011), for such claims[7] because Tennessee courts are bound by relevant United States Supreme Court precedent and because Cecil imposes an improper burden on petitioners.[8]

In response, the State agrees that Kimmelman sets the proper standard for this type of post-conviction claim and should be adopted by this Court.  However, the State contends that the post-conviction court properly denied the Petitioner's claim and that counsel was

been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.").  After reviewing the record, we note that the Court of Criminal Appeals referenced the Petitioner's direct appeal in which the court concluded that "even if the court erred in not suppressing the [petitioner's] statement, such error was harmless beyond a reasonable doubt."  See Phillips v. State, No. W2019-01927-CCA-R3-PC, slip op. at 10 (Tenn. Crim. App. Feb. 26, 2021) (alteration in original) (quoting Phillips, 2013 WL 6529309, at *20), perm. app. granted, (Tenn. June 17, 2021).  This reference to the direct appeal language supports the court's ultimate conclusion that "even if the petitioner had presented facts to support a conclusion that a Fourth Amendment challenge would have been successful, he still cannot show that the result of his trial would have been different given the overwhelming proof of his guilt."  Id.  It is clear that the Court of Criminal Appeals applied the reasonable probability standard even though it referenced the direct appeal language to support its conclusion.  Therefore, the Petitioner's argument on this issue has no merit.

[7] There is nothing in the record to indicate the post-conviction court or the Court of Criminal Appeals applied Cecil in this case.  In fact, the Court of Criminal Appeals applied and cited to Kimmelman.  Therefore, Cecil's holding has no effect on the case before us today.  Nonetheless, a discussion of Cecil is necessary to provide clarity for the lower courts regarding this type of post-conviction claim.

[8] The Petitioner also argues that the alleged Fourth Amendment violation in this case was structural constitutional error and requires automatic reversal, or, in the alternative, that it was non-structural constitutional error and that the State has failed to prove beyond a reasonable doubt that the error did not affect the verdict.  See State v. Rodriguez, 254 S.W.3d 361, 371–72 (Tenn. 2008).  The Petitioner's argument, however, disregards the unique procedural posture of his post-conviction claim and the fact that the alleged Fourth Amendment violation is raised as part of his Sixth Amendment claim of ineffective assistance of counsel.  See Kimmelman, 477 U.S. at 375 ("[W]hile respondent's defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim, the two claims have separate identities and reflect different constitutional values.").

not ineffective for declining to seek suppression of the Petitioner's statements based on the alleged Fourth Amendment violation.

## A. Standard of Review

Appellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this Court reviews de novo. Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001); see also Mobley v. State, 397 S.W.3d 70, 80 (Tenn. 2013). On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review. Fields, 40 S.W.3d at 458; Mobley 397 S.W.3d at 80.

## B. Tennessee's Post-conviction Law Related to Claims of Ineffective Assistance of Counsel

Tennessee's Post-Conviction Procedure Act provides a criminal defendant relief from a conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018 & Supp. 2020). Because the United States Constitution and Tennessee Constitution guarantee assistance of counsel to all criminal defendants during critical stages of the adversarial process, U.S. Const. amend. VI; Tenn. Const. art. I, § 9, the denial of effective assistance of counsel is a cognizable claim under the Act. Mobley, 397 S.W.3d at 79–80. "Counsel's representation becomes ineffective when it 'so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Id. at 80 (alteration in original) (quoting Strickland v. Washington, 466 U.S. 668, 686 (1984)).

When alleging ineffective assistance of counsel, section 40-30-110(f) states that the petitioner "shall have the burden of proving the allegations of fact [in his or her petition] by clear and convincing evidence." Tenn. Code Ann. § 40-30-110(f) (2018 & Supp. 2020). The post-conviction court, under the guidance of Strickland v. Washington, 466 U.S. 668, 687 (1984), then analyzes the facts to determine whether counsel's performance was deficient and whether that deficiency prejudiced the petitioner. Nesbit v. State, 452 S.W.3d 779, 786–87 (Tenn. 2014). Counsel's representation is deficient if "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Deficiency alone, however, does not warrant automatic relief. See id. at 692. A petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The petitioner must prove sufficient facts to support both the deficiency and prejudice

prongs of the Strickland inquiry—or, stated another way, the post-conviction court need only determine the petitioner's proof is insufficient to support one of the two prongs to deny the claim. Mobley, 397 S.W.3d at 80.

In practice, the overlap between a petitioner's statutory burden of proof under section 40-30-110(f) and a court's application of the Strickland inquiry means:

> the petitioner is required to prove the *fact* of counsel's alleged error by clear and convincing evidence. If that burden of proof is met, the court then must assess under Strickland whether that error "fell below an objective standard of reasonableness," and whether the error raised "a reasonable probability . . . that the result of the proceedings would have been different."

Dellinger, 279 S.W.3d at 294 (emphasis in original) (citations omitted) (quoting Strickland, 466 U.S. at 687–88, 694); see also Fields, 40 S.W.3d at 458 (reiterating that the petitioner is not required to prove the deficiency or prejudice prong of Strickland by clear and convincing evidence; rather, "the petitioner has 'the burden of proving *the allegations of fact* by clear and convincing evidence'" (emphasis in original) (quoting Tenn. Code Ann. § 40-30-210(f) (1997) (current version at Tenn. Code Ann. § 40-30-110(f)))).

In certain scenarios, the two-pronged Strickland inquiry may be modified. See Howard v. State, 604 S.W.3d 53, 58 (Tenn. 2020). For example, prejudice is presumed, and proof of actual prejudice is not required, in circumstances that "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id. (quoting United States v. Cronic, 466 U.S. 648, 658 (1984)). These circumstances include cases in which (1) a petitioner experiences a "complete denial of counsel;" (2) "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing;" and (3) "counsel is available to assist the accused during trial, [but] the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." Cronic, 466 U.S. at 659–60.[9]

On the other hand, the two-pronged Strickland inquiry is supplemented and requires the petitioner to present additional proof when the petitioner alleges that counsel was ineffective for failing to file a motion to suppress evidence on Fourth Amendment grounds, as is the case here. See Kimmelman, 477 U.S. at 382; Davis v. State, No. W2019-01886-CCA-R3-PC, 2020 WL 5033438, at *5 (Tenn. Crim. App. Aug. 25, 2020), perm. app. denied, (Tenn. Dec. 4, 2020); Cecil, 2011 WL 4012436, at *8. Both parties agree that the

---

[9] See also Roe v. Flores-Ortega, 528 U.S. 470, 483 (2000) (complete denial of counsel); Davis v. Alaska, 415 U.S. 308, 318 (1974) (failure to subject the State's case to adversarial testing); Powell v. Alabama, 287 U.S. 45, 53 (1932) (presumption of prejudice without inquiry into the actual conduct at trial).

- 11 -

United States Supreme Court's opinion in <u>Kimmelman</u> sets forth the correct legal standard and burden of proof to assess prejudice under <u>Strickland</u> in this specific context:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

<u>Kimmelman</u>, 477 U.S. at 375. Although this Court has recognized <u>Kimmelman</u>,[10] we have yet to apply it in this context. As a result, only some of Tennessee's intermediate appellate courts have applied <u>Kimmelman</u>, while others have applied a nearly identical analysis articulated by the Court of Criminal Appeals in <u>Cecil</u>.[11] The standard from <u>Cecil</u> is:

> In order to show prejudice, Petitioner must show by clear and convincing evidence that (1) a motion to suppress would have been granted and (2) there was a reasonable probability that the proceedings would have concluded differently if counsel had performed as suggested. In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing.

2011 WL 4012436, at *8 (citations omitted).

We agree with the parties that <u>Kimmelman</u> defines the appropriate standard for prejudice under the circumstances and should be utilized by Tennessee courts moving forward. However, we do not believe, as the Petitioner suggests, that <u>Cecil</u> is necessarily "bad law." Whether under <u>Kimmelman</u> or <u>Cecil</u>, to demonstrate prejudice, a petitioner is

---

[10] See <u>Nesbit</u>, 452 S.W.3d at 796 (regarding counsel's general duty to investigate and prepare a case); <u>Carpenter v. State</u>, 126 S.W.3d 879, 887 (Tenn. 2004) (regarding counsel's alleged failure to challenge the jury instructions); <u>State v. Ritchie</u>, 20 S.W.3d 624, 628 n.8 (Tenn. 2000) (regarding the authority of federal courts to issue writs of habeas corpus); <u>Caldwell v. State</u>, 917 S.W.2d 662, 668 (Tenn. 1996) (regarding the types of claims that <u>Stone v. Powell</u>, 428 U.S. 465 (1976), does not govern); <u>see also</u> <u>Cauthern v. State</u>, 145 S.W.3d 571, 606 (Tenn. Crim. App. 2004) (regarding the requirement that the post-conviction court consider the totality of the evidence at trial); <u>Moffitt v. State</u>, 29 S.W.3d 51, 56 (Tenn. Crim. App. 1999) (that the right to the effective assistance counsel is not conditioned on actual innocence).

[11] <u>Compare</u> <u>Davis v. State</u>, No. W2019-01886-CCA-R3-PC, 2020 WL 5033438, at *5 (Tenn. Crim. App. Aug. 25, 2020), <u>perm. app. denied</u>, (Tenn. Dec. 4, 2020), <u>Johnson v. State</u>, No. W2019-00741-CCA-R3-PC, 2020 WL 1277658, at *4 (Tenn. Crim. App. Mar. 16, 2020), <u>White v. State</u>, No. W2008-01661-CCA-R3-PC, 2010 WL 2219608, at *4 (Tenn. Crim. App. May 20, 2010), <u>perm. app. denied</u>, (Tenn. Sept. 23, 2010), <u>and</u> <u>O'Quendo v. State</u>, No. 89-150-III, 1990 WL 165807, at *3 (Tenn. Crim. App. Nov. 1, 1990), <u>with</u> <u>Smith v. State</u>, No. W2019-00994-CCA-R3-PC, 2020 WL 1972587, at *6 (Tenn. Crim. App. Apr. 24, 2020), <u>perm. app. denied</u>, (Tenn. Sept. 21, 2020), <u>and</u> <u>Santarone v. State</u>, No. E2018-01312-CCA-R3-PC, 2019 WL 6487419, at *10 (Tenn. Crim. App. Dec. 2, 2019), <u>perm. app. denied</u>, (Tenn. Apr. 16, 2020).

required to prove that he has a meritorious Fourth Amendment claim and that there is a reasonable probability the outcome of the proceedings would have been different had the evidence complained of been excluded. Kimmelman, 477 U.S. at 375; Cecil, 2011 WL 4012436, at *8. The Petitioner takes issue with the fact that Cecil includes the legal standard "clear and convincing" within its statement of the standard. See 2011 WL 4012436, at *8 ("In order to show prejudice, Petitioner must show *by clear and convincing evidence* that . . . ." (emphasis added)). The Petitioner argues that this imposes an improper burden on petitioners to prove prejudice by clear and convincing evidence rather than prove the *factual allegations* in support of such claim by clear and convincing evidence, as is required by the statute.

This is not the first time that this Court has addressed this type of alleged error regarding a lower court's recitation of the standard in post-conviction cases. See Fields, 40 S.W.3d at 458; Dellinger, 279 S.W.3d at 294. In the past, this Court looked to the lower court's analysis of the underlying claim to determine if the lower court actually applied the correct legal standard even if the language of the opinion appeared imprecise. See Fields, 40 S.W.3d at 458 & n.6. ("[T]his error . . . appears to be only one of imprecision in the use of its language, as it is clear from its opinion that the court applied the correct legal standard and properly concluded that the appellant's claim was without merit."); Dellinger, 279 S.W.3d at 294 ("Although this statement is imprecise, we agree with the State that the post-conviction trial court did not misapply the law.").

We acknowledge that the Cecil panel could have been more precise when reciting the petitioner's burden of proof. However, it is clear from the court's reference to Tennessee Code Annotated section 40-30-110(f) and its analysis of the petitioner's proof provided at the post-conviction hearing that the court applied the correct legal standard and considered whether the petitioner presented clear and convincing evidence to support the factual allegation of prejudice. Cecil, 2011 WL 4012436, at *8 ("Even though we could easily conclude that there is nothing in the record to show that trial counsel rendered deficient performance, we conclude that Petitioner failed to put on any proof of Strickland prejudice even assuming, *arguendo*, that trial counsel had been deficient by not filing any motion to suppress evidence."). Thus, we do not agree with the Petitioner that Cecil is "bad law," and we conclude that Cecil's test is for all intents and purposes is the same test from Kimmelman. Regardless, moving forward, Tennessee courts should utilize the test directly from Kimmelman to assess whether a petitioner has carried his or her burden to prove prejudice in this context.

We also find it helpful to provide further guidance to our lower courts to successfully implement Kimmelman alongside Strickland when this type of claim arises. In our research, we have found that other state courts use a variety of methods to integrate the Kimmelman standard into the Strickland analysis. For example, some courts simply cite and discuss Kimmelman as the definition for prejudice under Strickland in this specific

context.[12]   Others articulate a wholistic test with steps or guiding questions to aide in integrating the Strickland and Kimmelman standards into one test.[13]   Ultimately, we believe a clearly articulated three-pronged inquiry reflects the interconnected nature of Kimmelman and Strickland and supports the idea that this type of ineffective assistance of counsel claim creates an additional step in the traditional Strickland analysis.   Therefore, to establish a successful claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the Petitioner must prove: "(1) a suppression motion would have been meritorious; (2) counsel's failure to file such motion was objectively unreasonable; and (3) but for counsel's objectively unreasonable omission, there is a reasonable probability that the verdict would have been different absent the excludable evidence." Khalil-Alsalaami v. State, 486 P.3d 1216, 1239 (Kan. 2021) (citing United States v. Ratliff, 719 F.3d 422, 423 (5th Cir. 2013); Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006)); see W. Mark Ward, Tennessee Criminal Trial Practice § 32:18, Westlaw (database updated October 2021).

> As the United States Supreme Court contemplated in Kimmelman:
>
> Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner . . . relief. Only those . . . petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys . . . will be entitled to retrial without the challenged evidence.

477 U.S. at 382.   It remains the petitioner's burden to prove the factual allegations supporting all claims in the petition by clear and convincing evidence.   See Tenn. Code Ann. § 40-30-110(f).[14]

---

[12] See e.g., People v. Wharton, 809 P.2d 290, 323 (Cal. 1991) (en banc) (defining prejudice under Strickland in this context as the two factors from Kimmelman—a meritorious Fourth Amendment claim and a reasonable probability that the verdict would have been different absent the excludable evidence); Porter v. United States, 37 A.3d 251, 256 (D.C. 2012) (same); Leili v. State, 834 S.E.2d 847, 855 (Ga. 2019) (same).

[13] See e.g., State v. Lee, 181 So. 3d 631, 637 (La. 2015) ("Thus, if a reasonably competent attorney could have suppressed the evidence and as a result, the State would have dismissed the charges, the petitioner may show a basis for relief." (citing Northrop v. Trippett, 265 F.3d 372, 383–84 (6th Cir. 2001) (en banc); State v. Reichenbach, 101 P.3d 80, 87 (Wash. 2004)); Commonwealth v. Collins, 888 A.2d 564, 571 n.7 (Pa. 2005) ("In Pennsylvania, we have adapted the Strickland test as set forth in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987) and require a defendant to prove three prongs—that the claim has arguable merit, that counsel had no reasonable basis for his action or omission, and that the defendant was prejudiced by counsel's conduct.").

[14] Amici curiae ask this Court to adopt a preponderance of the evidence standard regarding a petitioner's burden to prove a meritorious Fourth Amendment claim and to prove deficiency under Strickland.  As far as the factual allegations supporting such claims, the petitioner's burden is clear and

### C.     Application of _Strickland_ and _Kimmelman_

We now turn to the application of _Strickland_ and _Kimmelman_ in the present case. Because the Petitioner bases his ineffective assistance of counsel claim on trial counsel's alleged failure to litigate a Fourth Amendment claim competently, the Petitioner must prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability the verdict would have been different absent the excludable evidence. _Kimmelman_, 477 U.S. at 375. Under the facts of this case, to establish a claim of ineffective assistance of counsel based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the Petitioner must prove that (1) a suppression motion premised on the alleged unconstitutional forty-eight-hour hold would have been meritorious; (2) counsel's failure to file such a motion on such grounds was objectively unreasonable; and (3) but for counsel's objectively unreasonable failure to raise this particular issue in a suppression motion, there is a reasonable probability that the verdict would have been different absent the excludable evidence. The Petitioner must prove all three of these prongs in order for his claim of ineffective assistance of counsel to succeed.[15]

### _i. Would a suppression motion have been meritorious?_

To answer the question of whether a suppression motion filed on Fourth Amendment grounds would have been meritorious, we must examine whether a Fourth Amendment violation occurred.

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art I, § 7. A warrantless search or seizure is presumptively unreasonable, and any evidence discovered is subject to suppression. Id. One of the exceptions to the warrant requirement is an arrest supported by probable cause. State v. Echols, 382 S.W.3d 266, 277 (Tenn. 2012). "Probable cause . . . exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are 'sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense." Id. at 277–78 (alterations in original) (quoting State v. Bridges, 963 S.W.2d 487, 491 (Tenn. 1997)). Probable cause must be "more than a mere

---

convincing as governed by Tennessee Code Annotated section 40-30-110(f). We also decline to assign the preponderance of the evidence standard to the conclusions of law associated with these issues under _Strickland_ or _Kimmelman_. The Petitioner did not present this argument in this appeal.

[15] We note that, if the Petitioner fails to prove even one of the three elements, the inquiry ends. As explained _infra_, we conclude that a suppression motion on Fourth Amendment grounds would not have been successful, so our inquiry could end there. However, we will address the remaining two questions in this analysis to provide guidance for our lower courts regarding the application of _Strickland_ and _Kimmelman_.

suspicion." State v. Lawrence, 154 S.W.3d 71, 76 (Tenn. 2005) (citing State v. Melson, 638 S.W.2d 342, 350 (Tenn. 1982)).

We begin our analysis with the observation that the Petitioner surrendered himself to police at approximately 12:40 p.m. on December 10, 2008. For purposes of our analysis, we assume this is the time of his arrest. When an individual is arrested without a warrant, as the Petitioner was in the present case, that individual is entitled to a "fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty," and the determination "must be made by a judicial officer either before or promptly after arrest." Gerstein v. Pugh, 420 U.S. 103, 125 (1975). A jurisdiction that provides a determination of probable cause "within [forty-eight] hours of arrest will, as a general matter, comply with the promptness requirement of Gerstein." County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991); see State v. Bishop, 431 S.W.3d 22, 42 (Tenn. 2014) ("[A] delay of less than forty-eight hours is presumptively reasonable."). The exclusionary rule applies when officers fail "to bring an arrestee before a magistrate within the [forty-eight hours] allowed by McLaughlin." Bishop, 431 S.W.3d at 42 (alteration in original) (quoting State v. Huddleston, 924 S.W.2d 666, 673 (Tenn. 1996)). "[A]ny evidence obtained as a result of an arrestee's unlawful detention must be excluded from evidence unless the arrestee's statement was 'sufficiently an act of free will to purge the primary taint' of the illegal detention." State v. Clayton, 535 S.W.3d 829, 849 (Tenn. 2017) (quoting Bishop, 431 S.W.3d at 42).

In the present case, the Petitioner surrendered himself to police on December 10, 2008, at approximately 12:40 p.m. A judicial commissioner made a probable cause determination that same day at 7:13 p.m., less than seven hours later. Thus, the Petitioner's detention is presumptively reasonable. See McLaughlin, 500 U.S. at 56; Bishop, 431 S.W.3d at 42. However, a probable cause determination made within forty-eight hours of arrest may still violate Gerstein if the arrested individual establishes that his probable cause determination was unreasonably delayed. McLaughlin, 500 U.S. at 56. "Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id. In evaluating the reasonableness of a delay, "courts must allow a substantial degree of flexibility" and "cannot ignore the often unavoidable delays in transporting arrested persons from one facility to another, handling late-night bookings where no magistrate is readily available, obtaining the presence of an arresting officer who may be busy processing other suspects or securing the premises of an arrest, and other practical realities." Id. at 56–57. When a probable cause determination is not held within forty-eight hours, the burden shifts to the State "to demonstrate the existence of a bona fide emergency or other extraordinary circumstance." Id. at 57.

The Petitioner argues that his probable cause determination was unreasonably delayed due to the Memphis Police Department's forty-eight-hour hold policy that was in place at the time of his arrest. This Court previously has criticized the use of the forty-eight-hour hold policy:

- 16 -

If the Memphis Police Department is, in fact, arresting suspects without probable cause and using this 48-hour hold procedure to gather "additional evidence to justify the arrest," this procedure clearly runs afoul of [McLaughlin]. Such a practice would be unconstitutional, even if limited to 48 hours or less. Our Court of Criminal Appeals has condemned the practice in the past, and we echo that court's concerns.

Bishop, 431 S.W.3d at 43 n.9 (citations omitted).

However, despite the Fourth Amendment concerns brought about by the Memphis Police Department's use of this policy, the proof in this case does not establish that the Petitioner's probable cause determination was unreasonably delayed. No evidence was presented suggesting that there was "a delay motivated by ill will" against the Petitioner nor that there was a "delay for delay's sake." McLaughlin, 500 U.S. at 56. In addition, the proof does not establish that there was a delay for the purpose of gathering additional evidence to justify the arrest, as the evidence available at that time was sufficient to provide probable cause to arrest the Petitioner. By the time the Petitioner surrendered himself to police, the police had responded to a crime scene where, at a minimum, two individuals had been stabbed and one had died of apparent strangulation. The perpetrator had fled the scene, but the three surviving victims each identified the Petitioner as the perpetrator from a photographic array. One of the surviving victims also had identified the Petitioner as the attacker by first and last name. These identifications established probable cause to believe that multiple felonies had been committed and that the Petitioner was the perpetrator. Because the Petitioner's arrest was supported by probable cause and his probable cause determination was not unreasonably delayed, there was no Gerstein violation. As a result, we agree with the post-conviction court and the Court of Criminal Appeals that the Petitioner has not established that his Fourth Amendment claim is meritorious. Therefore, we conclude that a suppression motion filed on Fourth Amendment grounds would not have been successful.

*ii. Was trial counsel's failure to file a motion to suppress on Fourth Amendment grounds objectively unreasonable?*

Next, the Petitioner must establish that trial counsel's failure to file a motion to suppress on Fourth Amendment grounds was objectively unreasonable. In order to do so, the Petitioner must prove that counsel's error was "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," Strickland, 466 U.S. at 687; Mobley, 397 S.W.3d at 80, and his or her representation fell "below an objective standard of 'reasonableness under prevailing professional norms.'" Mobley, 397 S.W.3d at 80 (quoting Strickland, 466 U.S. at 668). If the advice given or services rendered by counsel are "within the range of competence demanded of attorneys in criminal cases," counsel's performance is not deficient. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).

Reviewing courts must not measure counsel's performance through "20-20 hindsight." Felts v. State, 354 S.W.3d 266, 277 (Tenn. 2011) (quoting Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. Appellate courts "must be highly deferential and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" State v. Honeycutt, 54 S.W.3d 762, 767 (Tenn. 2001) (quoting Strickland, 466 U.S. at 689). The United States Supreme Court has emphasized that "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689–90 (citing Gary Goodpaster, The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases, 58 N.Y.U. L. Rev. 299, 343 (1983)). The fact that a particular strategy or tactical decision employed by trial counsel failed "does not, in and of itself, establish that the performance was deficient." Mobley, 397 S.W.3d at 81 (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

In Carpenter v. State, this Court stated that "[i]f a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue." 126 S.W.3d 879, 887 (Tenn. 2004) (citing Kimmelman, 477 U.S. at 375). Counsel's performance is not deficient if the issue they failed to raise has no merit or is weak. Id. We previously analyzed the merits of a suppression motion filed on Fourth Amendment grounds in this case, and we determined that such a motion would not have been successful had one been filed. Consequently, we need not further analyze trial counsel's decision not to seek suppression of the Petitioner's statements on Fourth Amendment grounds. Given that the issue lacked merit, trial counsel's decision to seek suppression on grounds other than Fourth Amendment grounds cannot be said to have been objectively unreasonable.

*iii. Would the verdict have been different but for trial counsel's failure to file a motion to suppress on Fourth Amendment grounds?*

Lastly, the Petitioner must show that there is a reasonable probability that the verdict would have been different absent the excludable evidence. Kimmelman, 477 U.S. at 375. Once again, we reiterate that a motion to suppress filed on Fourth Amendment grounds in this case would not have been successful. However, even assuming such a motion would have been granted and the Petitioner's inculpatory statements to police had been suppressed, the proof does not demonstrate that the result of the Petitioner's case would have been different.

In his first statement to police, the Petitioner admitted to stabbing both C.L. and M.L., though he claimed he did so in self-defense. Phillips, 2013 WL 6529308, at *7–8. In his second statement, the Petitioner again admitted responsibility for the injuries to C.L. and M.L. but also admitted that he was responsible for the death of F.G. Id. at *8. While we recognize that these statements were indeed inculpatory, they added little substance to the other evidence of the Petitioner's guilt that was presented to the jury.

The jury heard testimony from all three surviving victims regarding the events of December 9, 2008. See id. at *1–6. M.L., C.L., and M.J.L. each described the attack and identified the Petitioner in court as the perpetrator. Id. Detective Tim Reynolds of the Memphis Police Department, who responded to the crime scene, testified that a crowd gathered while he at the victims' home, and some members of the crowd stated that the Petitioner was the perpetrator. Id. at *7. Detective Reynolds testified that, the next day, he transported the Petitioner to the police station and overheard the Petitioner tell his side of the story to his mother. Id. While explaining the story, the Petitioner admitted to fighting C.L. with a knife. Id.

In addition, the jury heard testimony from M.L. and C.L. that, following the attack, they each identified the Petitioner as the perpetrator from a photographic array shown to them by the police. Id. at *5–6. C.L. even testified that he had known the Petitioner socially for several years. Id. at *5. The trial court found that these identifications were reliable, and the Court of Criminal Appeals affirmed that finding in the Petitioner's direct appeal, stating:

> The record shows that each victim had ample opportunity to view the [Petitioner] at the time of the crime. The victims' testimony made clear that they were attentive for at least portions of the incident, conversing with the [Petitioner] and struggling with him face-to-face. The record also shows that the victims' prior descriptions of the assailant were accurate and that one of the victims knew the [Petitioner] prior to the incident and another victim had previously met the [Petitioner]. The record further shows that the victims immediately, and with certainty, identified the [Petitioner] from the array and that the length of time between the crime and the confrontation was within hours. The record does not preponderate against the trial court's finding that the totality of the circumstances shows that the identifications were reliable.

Id. at *21.

Given this proof of the Petitioner's guilt, we conclude that the Petitioner has not established a reasonable probability that his verdict would have been different had his statements to police been suppressed.

**CONCLUSION**

Because the Petitioner has failed to prove the three prongs necessary to satisfy Strickland and Kimmelman, we conclude that the Petitioner cannot prevail on his claim for ineffective assistance of counsel. Consequently, we affirm the judgment of the Court of Criminal Appeals.

_____
JEFFREY S. BIVINS, JUSTICE